Judgment rendered September 25, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,905-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

COURTNEY HANDY, ON BEHALF OF       Plaintiffs-Appellees
COURTLANDRA ARMSTEAD, JAMETRICE
HANDY AND AIDEN HANDY

versus

STATE FARM MUTUAL AUTOMOBILE       Defendant-Appellant
INSURANCE COMPANY

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2016CV01701

Honorable Tammy Lee, Judge

* * * * *

DAVENPORT, FILES & KELLY, L.L.P.       Counsel for Appellant
By: M. Shane Craighead

LAW OFFICE OF ANTHONY J. BRUSCATO       Counsel for Appellees
By: Anthony J. Bruscato

* * * * *

Before COX, STEPHENS, and McCALLUM, JJ.

**COX, J.**

State Farm Mutual Automobile Insurance Company ("State Farm") appeals a judgment from Monroe City Court in favor of the plaintiffs, Courtney Handy, on behalf of her minor son, Aiden Handy, and Reginald Handy, on behalf of the minors, Courtlandra Armstead and Jametrice Handy. The trial court allowed the plaintiffs to proceed against State Farm under the uninsured motorist ("UM") provision of the insurance policy. For the following reasons, we respectfully reverse the trial court's judgment.

## FACTS

The accident occurred on May 19, 2015. Courtney was driving a 2004 Ford F-150 north on North 18th Street at its intersection with Millhaven Road and Texas Avenue in Monroe, Louisiana. The intersection is controlled by a traffic light. Her minor siblings, Courtlandra and Jametrice, and her minor son, Aiden, were all passengers in the vehicle. North 18th Street runs north and south. Millhaven Road and Texas Avenue both run east and west. As Courtney was traveling north on North 18th Street, she made a left turn in front of the southbound vehicles causing her to collide with the other vehicles. The parties entered into the following stipulation agreement:

> This litigation involves a four-vehicle accident for which Plaintiff, Courtney D. Handy, was at fault. State Farm provided automobile liability coverage on the vehicle being operated by Ms. Handy in the coverage amounts of $15,000.00 per person per accident, and $30,000.00 total per accident for bodily injury.

> Five bodily injury claims were presented to State Farm:

> 1) David Biddle;

> 2) Kavin Clay Johnson;

3) Courtlandra Armstead (Plaintiff's sister and passenger in the Handy vehicle);

4) Jametrice Handy (Plaintiff's brother and passenger in the Handy vehicle); and

5) Aiden Handy (Plaintiff's minor son and passenger in the Handy vehicle).

Biddle treated at Glenwood Regional Medical Center and Sanson's Family Medicine, incurring $4,406.90 in medical expenses.

Johnson treated for about four months, incurring $4,584.00 in medical expenses.

[Courtlandra][1] Armstead, Plaintiff's sister, treated for about a month (an emergency room visit and three visits to Dr. J.D. Patterson, the last one being on June 18, 2015) and incurred $2,709.00 in medical expense.

Jametrice Handy, Plaintiff's brother who was approximately two years old at the time of the accident, visited the emergency room at St. Francis Medical Center, and saw Dr. Patterson once. He incurred $2,528.15.

Aiden Handy, Plaintiff's son who was about three years old at the time of the accident, incurred $2,528.15 in medical expense. He visited the emergency room and saw Dr. Patterson once.

State Farm's policy with Plaintiff states that it has "the right to . . . investigate, negotiate, and settle any claim or lawsuit."

The Biddle claim involved $4,406.90 in medical expense, and State Farm settled that claim for a total of $6,909.00 (*i.e.,* about $2,500, plus medical).

The Johnson claim involved four months of treatment and $4,584.00 in medical expense. State Farm was able to settle that claim for $12,007.32 ($7,423.32, plus medical, which equates to less than $2,000.00 per month).

---

[1] Courtlandra was referred to as "Armstead, Plaintiff's sister" in the stipulation agreement. Courtlandra's first name was added in brackets because she is referred to as "Courtlandra" throughout this opinion.

State Farm thereafter made settlement offers to Courtlandra Armstead, Jametrice Handy, and Aiden Handy, the total of which offers would have expended the remainder of the aggregate policy limit. State Farm offered Courtlandra Armstead $4,618.20 ($1,909.20 plus medical); Jametrice Handy $3,232.74 ($704.59 plus medical); and Aiden Handy $3,232.74 ($704.59 plus medical).

The F-150 that Courtney was driving at the time of the collision was insured by State Farm for the benefit of Reginald Handy and anyone driving his vehicle with his permission, which included Courtney.

Courtney filed a petition for damages on behalf of the minors on May 18, 2016. She alleged that each minor sustained the following damages: physical injuries; physical pain and suffering; mental anguish and distress; and, medical expenses. She filed a supplemental and amending petition, asserting that State Farm failed to timely pay their claims and was arbitrary, capricious, unreasonable, and without probable cause.

State Farm filed a dilatory exception of lack of procedural capacity. State Farm argued Courtney did not have the procedural capacity to file on behalf of her minor siblings, Courtlandra and Jametrice, and she failed to provide sufficient allegations that she has the procedural capacity to bring claims on behalf of Aiden. State Farm also filed a dilatory exception of vagueness. State Farm argued that Courtney failed to provide facts in support of her claim that it failed to timely pay a claim and was arbitrary, capricious, unreasonable, and without cause.

The trial court granted both of State Farm's dilatory exceptions. Courtney was given ten days to amend her petition to conform to the legal requirements of legal capacity to sue on behalf of the minors and to state with more particularity the facts and allegations against State Farm.

Courtney filed a second supplemental and amending petition on October 17, 2016. She stated that she is the mother of Aiden Handy and is responsible for his medical expenses. She clarified that Reginald Handy is responsible for the medical expenses of Courtlandra Armstead and Jametrice Handy.[2] Courtney stated that she was amending the original petition to state that Reginald is now filing on behalf of Courtlandra and Jametrice.

State Farm again filed dilatory exceptions of lack of procedural capacity and vagueness, reasserting its previous arguments. State Farm included a copy of a letter it sent to the plaintiffs' counsel requesting that counsel contact State Farm to discuss the fact that Courtney is still the petitioner in the second supplemental and amending petition. As of the filing of the exceptions, State Farm stated it had not been contacted by the plaintiffs' counsel.

State Farm filed an answer on January 26, 2018. In answering Courtney's second supplemental and amending petition, State Farm affirmatively pled "its contractual limits of $15,000 per person per accident and $30,000 total per accident for bodily injury so as to preclude recovery in excess thereof against it under any circumstances." State Farm also asserted that after the bodily injury claims of the other drivers (Biddle and Johnson) were paid, a balance of $11,083.68 remained on the aggregate bodily injury limit.[3] State Farm affirmatively pled the provisions of its policy, including its contractual "right to … investigate, negotiate, and settle any claim or

---

[2] Their mother was Sonja Demetrice Handy Armstead, who died on February 15, 2014. Reginald is Courtney's brother.

[3] Biddle was paid $6,909 and Johnson was paid $12,007.32, which totaled $18,916.32. This total subtracted from the aggregate limit of $30,000 equals $11,083.68.

lawsuit." State Farm denied that it acted in an arbitrary, capricious, or unreasonable manner in its effort to negotiate settlements.

On January 30, 2018, the plaintiffs filed a third supplemental and amending petition. Courtney and Reginald both filed on behalf of their respective minors. They asserted that the liability coverage was insufficient to fully compensate all claimants. They stated that "one or two of the remaining claimants will exhaust the balance of the liability coverage, forcing one or two to seek [UM] coverage under the [State Farm] policy covering the Handy vehicle[.]" On February 6, 2018, the trial judge signed an order allowing the third supplemental and amending petition be filed.

State Farm objected to the filing of the third supplemental and amending petition and moved to strike it, which the trial court denied. State Farm pointed out in its motion to strike and answer, filed February 6, 2018, that the third petition was filed the morning of trial. It argued that it had no opportunity to answer the third petition because it was filed the day of trial. It asserted that under La. C.C.P. art. 1571(A)(2), ordinary proceedings shall not be assigned for trial until after an answer is filed. State Farm also denied that the plaintiffs had standing to collect UM coverage under the facts of this case and language of the policy.

The plaintiffs argued that the third petition "did not create any new factual issues or require additional witnesses, but was simply allowing the court to consider whether the policy and applicable law would allow [UM] coverage to be available." The plaintiffs also argued that if no answer had been filed by State Farm, the amending and supplemental pleadings would have been allowed without court order, and "since [UM] coverage was part

5

of the preparation for trial until the question arose whether a faxed copy of [State Farm's] answer, discovered the night before trial, would require an order for the filing of the additional pleadings."

The trial was held on January 30, 2018. Officer Anthony Walker, with the Monroe Police Department, was the first to testify. Officer Walker responded to the accident and wrote the corresponding report. Officer Walker was called to testify to his procedure when working an accident and completing the accident report. The accident report was admitted into evidence.

Next to testify was Adrienne Havard, the audit claim representative for State Farm in 2016. She testified that she handled the bodily injury claims from the accident. She testified that the policy covering the Handy vehicle was "a minimum limits policy of $15,000/$30,000." Ms. Havard stated that she received the file in February or March of 2016 from another claim representative. She testified that when she received the file, she reviewed the file in its entirety, including steps taken by the previous claim representative and all medical records that had been received.

Ms. Havard verified the settlement letter and documentation sent to Biddle. She also verified two letters sent from State Farm to the plaintiffs' counsel, on January 26 and February 23, 2016, requesting a status on the injury claims of the three minors. Ms. Havard identified correspondence from the plaintiffs' counsel which included the medical records and medical expenses of the minors. The last correspondence from the plaintiffs' counsel arrived May 2, 2016. She stated that she conducted a review of the minors' bodily injury claims on May 10, 2016. Ms. Havard testified that in

6

evaluating the minors' claims, she considered the medical bills and length of treatment that each claimant sought. She stated that the general damages amounts that she calculated came from previous experience handling claims and case law.

Ms. Havard testified that she evaluated each claimant individually and determined the damages range for each person. She stated that Courtlandra was 15 years old at the time of the accident, went to the emergency room after the accident, followed up with a doctor three times in about six weeks following the accident, and her medical expenses totaled $2,709. Ms. Havard testified that after evaluating Courtlandra's claim, she determined her damages range to be $4,709 to $5,709.[4]

Next, Ms. Havard addressed Aiden's claim. She testified that Aiden was three years old at the time of the accident, went to the emergency room after the accident, followed up with a doctor once, and his medical expenses totaled $2,528.15. She stated that after evaluating Aiden's claim, she determined his damages range to be $3,528.15 to $4,528.15.[5]

In regards to Jametrice's claim, Ms. Havard testified that Jametrice was two years old at the time of the accident, went to the emergency room after the accident, followed up with a doctor once, and his medical expenses totaled $2,528.15. She stated that after evaluating Jametrice's claim, she determined his damages range to be $3,528.15 to $4,528.15.[6]

---

[4] This range was calculated by adding the medical expenses to general damages of $2,000 to $3,000.

[5] This range was calculated by adding the medical expenses to general damages of $1,000 to $2,000.

[6] See footnote 4.

Ms. Havard testified that she evaluated the claim of Johnson, the driver of another vehicle involved in the accident, at the same time she evaluated the minors' claims. She stated that Johnson visited the emergency room on the day following the accident, followed up with a chiropractor for about four months, and his medical expenses totaled $4,584. She testified that after evaluating his claim, she determined Johnson's damages range to be $12,584 to $19,584.[7]

Ms. Havard testified that when she totaled the low end of the range for each claimant, she realized there was not enough coverage for all of the injury claims and that she would have to make a reduced offer to each person. She stated, "[A]t that time, I made what I thought were reasonable and appropriate offers at a reduced rate to all four [claimants]." She testified that she offered Courtlandra $4,618.20, Aiden and Jametrice each $3,232.74, and Johnson $12,007.32. She stated that once the litigation began, the claim was transferred from her to a litigation claim representative.

On cross-examination, the plaintiffs' counsel asked Ms. Havard if anything in the claim file discussed whether State Farm acted in bad faith or in a manner that was arbitrary, capricious, or unreasonable. State Farm's counsel objected and argued that any correspondence from attorneys addressing the merits of the plaintiffs' claim would be privileged information. The trial court allowed the questioning. Ms. Havard responded to the questioning by stating, "There was nothing in the claim file that showed any type of bad faith." When asked about UM coverage, she stated,

---

[7] This low end included $8,000 in general damages, which Ms. Havard testified was $2,000 per month of treatment. The high end included $15,000 in general damages.

"The Handys did have uninsured motorist's coverage on their policy. However, it would not have been made available at the time of this loss based on the definition in our policy."[8] The claim file was not brought to court or admitted into evidence. Ms. Havard's handwritten notes from the file were admitted into evidence.

---

[8] Ms. Havard testified that page 16 of the Handy insurance policy addressed the UM coverage. The UM portion of the policy states:

> ***Uninsured Motor Vehicle*** means an land motor vehicle:
> 1. the ownership, maintenance, or use of which is:
>> a. not insured or bonded for bodily injury liability at the time of the accident; or
>> b. insured or bonded for bodily injury liability at the time of the accident; but
>>> (1) the limits are less than required by the financial responsibility act of Louisiana;
>>> (2) the insuring company:
>>>> (a) denies that its policy provides liability coverage for nonpunitive damages that result from the accident; or
>>>> (b) is or becomes insolvent; or
>>> (3) the total limits of coverage for bodily injury liability from all sources:
>>>> (a) are less than the amount of damages the ***insured*** is legally entitled to collect for ***bodily injury***; or
>>>> (b) have been reduced by payments to ***persons*** other than ***you*** and ***resident relatives*** to less than the amount of such damages; and
> 2. the owner and driver of which remain unknown and which causes ***bodily injury*** to the ***insured***. If there is no physical contact between that land motor vehicle and the ***insured*** or the vehicle the ***insured*** is ***occupying***, then the ***insured*** must prove, by an independent and disinterested witness, that the ***bodily injury*** was the result of the actions of the unknown driver.
>
> ***Uninsured Motor Vehicle*** does not include a land motor vehicle:
> 1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;
> 2. ***owned by***, rented to, or furnished or available for the regular use of ***you*** or any ***resident relative***;
> 3. ***owned by***, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law unless the vehicle is an ***uninsured motor vehicle*** as defined in item 1.b.(3);
> 4. ***owned by*** or rented to any government or any of its political subdivisions or agencies;
> 5. designed for use primarily off public roads except while on public roads; or
> 6. while located for use as a dwelling or other premises.

Barbara LeBlanc, the litigation claim representative who worked on the claim file, also testified. Counsel entered into a stipulation agreement that Ms. LeBlanc would testify that "she assumed handling of the file once litigation was initiated. She reviewed the evaluations and the offers made and found them to be appropriate and reasonable and didn't change them." The plaintiffs' counsel stated that he would enter into the stipulation, but then stated he wanted to ask Ms. LeBlanc two questions. Ms. LeBlanc testified that she agreed with Ms. Havard's testimony. In regards to the UM coverage, she stated, "Based on the information that I have from the claim file I'm looking at this policy, the UM coverage would not apply."

The trial court held that State Farm failed to act in good faith to equitably resolve all claims presented. The trial court stated the following in its written reasons for judgment:

> State Farm's overall handling of the settlement negotiations, which included five serious, competing personal injury claims, is highly suspect to the Court, who finds that the remaining liability coverage is wholly insufficient to adequately satisfy the damages of the three minor claimants.
>
> Further, this Court, having had the opportunity to directly observe the demeanor of [State Farm's] witnesses during their testimony, finds the same to be woefully lacking in truth.
>
> ***
>
> The Court holds that [State Farm] is liable unto the three minor children for the full extent of their injuries, and that the claimant(s) may proceed against the uninsured motorist coverage of the policy,... should any claim(s) exhaust the coverage afforded pursuant to the original policy.

The trial court's written reasons for judgment were signed on May 25, 2018.

After a hearing on the expenses and costs of the plaintiffs, the trial court rendered judgment in favor of the plaintiffs in the following amounts:

| | | | |
|---|---|---|---|
| • Courtlandra Armstead: | $7,250 | General damages | |
| | 2,709 | Special damages | |
| | $9,959 | Total (from liability coverage) | |
| • Aiden Handy: | $6,500.00 | General damages | |
| | 2,592.36 | Special damages | |
| | $9,092.36 | Total (from UM coverage) | |
| • Jametrice Handy: | $6,250.00 | General damages | |
| | 2,592.26 | Special damages | |
| | $8,842.26 | Total (from UM coverage) | |

The trial court also awarded each claimant $5,000 pursuant to La. R.S. 22:1973, which provides for penalties when the insurer does not act in good faith. The plaintiffs were awarded attorney fees pursuant to La. R.S. 22:1892, in the full amount of $7,500. State Farm was assessed with all costs of the proceeding.

The trial court noted that the policy not only covered the operator of the vehicle, but also "any resident relative while occupying the covered vehicle." The trial court found that Courtney and all three minors were members of Reginald's household. The trial court found that State Farm engaged in a pattern of arbitrary and capricious conduct, "the most poignant of which was its decision to fully settle the other claimants' actions, without giving due consideration to the remaining parties." State Farm now appeals the trial court's judgment.

**DISCUSSION**

*UM Coverage*

State Farm argues that the trial court erred in concluding that the UM coverage provisions of the Handy policy provided UM coverage to the occupants of the Handy vehicle. It points out that all three minor claimants

11

were occupants of the Handy vehicle and Courtney was solely at fault for the accident. State Farm's position is that the policy provides UM coverage when the insured is legally entitled to recover from the owner and driver of an uninsured vehicle. It also states that the term "uninsured vehicle" does not include a land vehicle whose ownership, maintenance, or use is provided liability coverage by the policy.

Our jurisprudence is clear and well-settled regarding the ability of a passenger to claim damages under both the liability portion and UM portion of an insurance policy. In *McGee v. Allstate, infra*, this Court detailed the law and jurisprudence applicable to passenger claims under both liability and UM coverage. Where an insurance policy excludes an insured vehicle from the definition of an uninsured or underinsured vehicle, a guest passenger cannot recover under both the liability and the UM provisions of the policy where the host driver is at fault. *McGee v. Allstate Ins. Co.*, 52,299 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1161, *writ denied*, 2018-2057 (La. 2/18/19), 265 So. 3d 773.

The insurance policy covering the Handy vehicle specifically states that a UM vehicle does not include a vehicle "whose ownership, maintenance, or use is provided Liability Coverage by this policy[.]" It is undisputed that the Handy vehicle was provided liability coverage under the insurance policy. Therefore, the Handy vehicle is not covered under the UM provisions of its own insurance policy.

The three minor claimants were all passengers in Courtney's vehicle. It is undisputed that Courtney was solely at fault for the accident. Based on these facts, the definition of a UM vehicle in the policy, and the clear law in

12

the matter, the three minor claimants cannot recover under the UM provisions of the Handy vehicle policy. For these reasons, we respectfully reverse the trial court's ruling allowing the claimants to recover under the UM provisions of the policy.

*Arbitrary & Capricious*

State Farm argues the trial court erred in finding it was unreasonable, arbitrary, or capricious in its handling of the minors' claims. It highlights Louisiana Supreme Court language in *Guillory v. Lee*, 2009-0075 (La. 6/26/09), 16 So. 3d 1104, describing arbitrary and capricious as a "vexatious refusal to pay." State Farm argues that it did not refuse to pay the minors' claims, but made reasonable settlement offers in good faith, in an effort to avoid excess, uninsured exposure to the insured. It asserts that there is no evidence that it behaved in an unreasonable, arbitrary, or capricious manner in handling these claims. State Farm requests that this Court reverse the trial court's award of penalties and attorney fees.

The plaintiffs argue that the trial court did not err in awarding penalties and attorney fees against State Farm. They assert that according to La. R.S. 22:1973, if the insurer fails to pay the undisputed portion of a claim within 60 days of proof of loss, the court has discretion to impose a penalty.

La. R.S. 22:1973 states, in pertinent part:

A. An insurer… owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

\*\*\*

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

(6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

La. R.S. 22:1973 and 22:1892 provide for penalties, including attorney fees, against an insurer whose failure to pay a claim after receiving satisfactory proof of loss is found to be arbitrary, capricious, or without probable cause. These statutes are penal in nature and must be strictly construed. *Shreve v. State Farm Fire & Cas. Co.*, 52,032 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1175, 1185, *writ denied*, 2018-1058 (La. 10/29/18), 255 So. 3d 574. Penalties and attorney fees are inappropriate when the insurer has a reasonable basis to defend the claim and was acting in good-faith reliance on that defense. *Id.*

The phrase "arbitrary, capricious, or without probable cause," is synonymous with "vexatious." *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So.2d 1012; *Shreve v. State Farm Fire & Cas. Co., supra.* The Louisiana Supreme Court has noted that a "vexatious

14

refusal to pay" means unjustified, without reasonable or probable cause or excuse. *Reed v. State Farm Mut. Auto. Ins. Co., supra.* Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. *Id.* Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. *Id.* Because the question is essentially a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error. *Id.* However, when the record does not support the trial court's determination on this issue, the trial court's decision will be reversed.

In the case before us, the record does not support the trial court's determination that State Farm acted in an arbitrary or capricious manner in refusing to pay the minor claimants under the UM policy provisions. State Farm acted in good faith in offering to settle the minors' claims within the liability limits of the Handy policy. As stated in the previous section, the minors' claims were limited to the liability portion of the policy and were not covered under the UM provisions. Therefore, the minors' settlement offers were confined to the remaining liability coverage limit. State Farm's offers to the minors covered their medical expenses and gave them each an additional award, which used every available dollar of the liability limits.

State Farm did not fail to pay the minors' claims. Instead, after receiving the medical bills, it offered a settlement to the minors to cover their medical expenses, plus additional damages. Nothing in the record suggests that State Farm acted arbitrarily, capriciously, or without probable cause in making the settlement offers to the minors. The award of attorney fees and additional damages is penal in nature. Here, the record does not

15

support the determination of the trial court that State Farm acted in such a way that a penalty should be imposed. State Farm was justified in its actions to settle the claim within the policy's liability limits. Therefore, we respectfully reverse the trial court's judgment awarding attorney fees and penalties to the plaintiffs.

*Third Amended Petition*

State Farm argues that the trial court erred and/or abused its discretion by allowing the plaintiffs to file a third supplemental and amending petition the morning of trial, which for the first time alleged coverage under the UM provisions of the policy. Because we have reversed the trial court's ruling regarding the availability of the UM coverage to the minor claimants, this issue is now moot.

## CONCLUSION

For the foregoing reasons, we respectfully reverse the trial court's judgment. Costs associated with this appeal are cast on the plaintiffs.

**REVERSED.**